# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ELEAZAR GARCIA,<br><br>             Plaintiff,<br><br>vs.<br><br>JEFF DAVIS, Sarpy County Sheriff, in his individual capacity;<br><br>             Defendant. | 4:20CV3049<br><br>**MEMORANDUM AND ORDER** |

This matter is before the court on Defendant's Motion for Summary Judgment. ([Filing 45](#)). For the reasons that follow, the Motion is granted.

## I. BACKGROUND

Pursuant to 42 U.S.C. § 1983, Plaintiff filed a Complaint ([filing 1](#)) and Amended Complaint ([filing 22](#)), alleging that during his arrest on September 30, 2017, in Underwood, Iowa, U.S. Marshals severely injured his arm. Plaintiff was taken to a hospital in Council Bluffs, Iowa, where a doctor recommended that he undergo surgery as soon as possible. Surgery was scheduled for two days later, which was a Monday. Plaintiff was taken to the Pottawattamie County Jail in Iowa for holding over the weekend.

On Monday, the U.S. Marshals picked Plaintiff up from the jail and transported him to the Sarpy County Jail instead of to the hospital for surgery. When Plaintiff arrived at the Sarpy County Jail, he asked to be taken to the hospital or for pain medication because the pain was causing him to feel faint. Plaintiff claims "[t]hey just came by to look at [him] but did nothing to help [him]." ([Filing 1 at CM/ECF p. 6](#).) He further claims he "did not get the proper medical attention he needed" from the Sarpy County Jail staff. ([Filing 22 at CM/ECF p. 2](#).)

Plaintiff alleges that two weeks later, he was taken to see a doctor at an off-site clinic, where he was told that he needed surgery as soon as possible. Plaintiff asserts that two weeks later, on October 30, 2017, he had surgery. While the doctor recommended that Plaintiff stay overnight in the hospital, jail staff disagreed and ordered Plaintiff to return to the Sarpy County Jail three hours after surgery was complete. Plaintiff alleges that after returning to the jail, he repeatedly asked for, but was denied, pain medication for his "excruciating" pain. (Filing 1 at CM/ECF p. 7.)

At a follow-up appointment two weeks later with his surgeon, he was told, after more x-rays, that he needed a second surgery to replace his elbow. Plaintiff underwent surgery on November 30, 2017 and was allowed to stay the night in the hospital so he could receive pain medication. At his three-week follow-up appointment, the surgeon told Plaintiff there was nothing further that could be done. Since that time, a neurologist advised Plaintiff that he has severe nerve and tendon damage, which prevents Plaintiff from fully extending his arm and causes chronic daily pain. The neurologist advised Plaintiff he "would have to be on disability for the rest of [his] life." (*Id.* at CM/ECF p. 8.)

Plaintiff alleges that Jeff Davis, Sarpy County Sheriff ("Sheriff Davis" or "Defendant"), "is responsible for the lack of medical attention [Plaintiff] received from [Sheriff Davis's] staff." (Filing 22 at CM/ECF p. 2.) Plaintiff requests $2,000,000 in damages. (Filing 1 at CM/ECF p. 9.)

After initial review of Plaintiff's Complaint (*id.*) and Amended Complaint (Filing 22), the court determined that Plaintiff plausibly stated claims against Sheriff Davis in his individual capacity for deliberate indifference to Plaintiff's serious medical needs when Plaintiff was a pretrial detainee. (Filing 24.)[1] Sheriff Davis now

---

[1] The court also determined that Plaintiff plausibly stated claims against Special Deputy U.S. Marshals David Coombs, Jr., and Jacob Betsworth in their individual capacities for excessive force. (Filing 24.) The court later dismissed those claims as barred by the statute of limitations. (Filing 38.)

2

moves for summary judgment based on qualified immunity and lack of evidentiary support. ([Filings 45](#) & [46](#).)

## II. SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).

In ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *See Dancy v. Hyster Co.*, 127 F.3d 649, 652-53 (8th Cir. 1997). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue; the court merely determines whether there is evidence creating a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986); *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011).

"There is a genuine dispute when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (internal quotations and citations omitted). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the initial responsibility of informing the court of the basis for the motion and must identify those portions of the record which the moving

party believes show the lack of a genuine issue of material fact.² *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the moving party does so, the burden then shifts to the nonmoving party, who "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, summary judgment should be granted. *Smith-Bunge v. Wisconsin Cent., Ltd.,* 946 F.3d 420, 424 (8th Cir. 2019).

### III. SUMMARY JUDGMENT PROCEDURE

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

This court's local rules further specify that "[t]he moving party must include in the brief in support of the summary judgment motion a separate statement of

---

² This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018).

4

material facts," which "should consist of short numbered paragraphs, each containing pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials that support the material facts stated in the paragraph." NECivR 56.1(a) (underlining in original). "The statement must not contain legal conclusions." *Id.*

The opposing party's brief must include "a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). "Each material fact in the response must be set forth in a separate numbered paragraph, must include pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies, and, if applicable, must state the number of the paragraph in the movant's statement of material facts that is disputed." *Id.*

A party's failure to comply with these requirements can have serious consequences: The moving party's "[f]ailure to submit a statement of facts" or "[f]ailure to provide citations to the exact locations in the record supporting the factual allegations may be grounds to deny the motion for summary judgment." NECivR 56.1(1)(a) (underlining omitted). On the other hand, "[p]roperly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." NECivR 56.1(1)(b)(1) (underlining omitted).

## IV.  EVIDENCE PRESENTED

In this case, Defendant's brief in support of his Motion for Summary Judgment contains a separate, 28-paragraph statement of material facts with proper references to the record. (Filing 26 at CM/ECF pp. 4-8). The documents referenced include: the affidavit of Defendant (filing 46-1); the affidavit of Captain Dan Shukis (Filing 46-2), who at all relevant times served as the Facility Administrator of the Sarpy County Jail (also known as Jail Captain); the affidavit of Jo Martin (filing 46-3), who at all relevant times served as a Sarpy County Deputy; and Plaintiff's Sarpy County Jail records, which included medical records (filings 46-4 & 46-5). Plaintiff

5

has not responded to Defendant's Motion for Summary Judgment. While Plaintiff's failure to file an opposing brief is not considered a confession of the motion, *see* NECivR 7.1(b)(1)(C), his failure to controvert Defendant's statement of material facts is considered an admission for purposes of deciding the motion. *See* NECivR 56.1(1)(b)(1); Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . .").

## V. STATEMENT OF FACTS

The court finds there is no genuine dispute regarding the following facts:

1. On or about September 30, 2017,[3] Plaintiff was arrested by U.S. Marshals in Underwood, Iowa. (Filing 22 at CM/ECF, p. 1.)

2. During the course of the arrest, Plaintiff's arm was severely injured. (*Id.*)

3. After the arrest, Plaintiff was taken to a Council Bluffs, Iowa hospital where he was examined and a doctor recommended surgery on his arm. (*Id.*; Filing 46-3 at CM/ECF p. 2, ¶ 6; Filing 46-4 at CM/ECF, p. 9.)

4. Surgery was scheduled for Tuesday, October 3, 2017 at an Omaha, Nebraska hospital.[4] (Filing 46-3 at CM/ECF pp. 2, 7, ¶¶ 6, 7; Filing 46-4 at CM/ECF, pp. 8-10; Filing 46-5 at CM/ECF p. 11.)

---

[3] Both parties represent that the date of Plaintiff's arrest was September 30, 2017, but there are documents in the record indicating that the date of Plaintiff's arrest may have been September 29, 2017. (Filing 46-4 at CM/ECF p. 9.) Any discrepancy in dates is immaterial and does not affect the disposition of the case.

[4] Although both parties represent that the surgery was scheduled for a Monday, the record indicates it was scheduled for October 3, 2017, which was a Tuesday. In addition, Defendant, citing Plaintiff's Amended Complaint, states that Plaintiff's

6

5. Plaintiff was taken to the Pottawattamie County Jail in Iowa for holding over the weekend. (Filing 22 at CM/ECF p. 1; Filing 46-3 at CM/ECF p. 2, ¶ 6; Filing 46-4 at CM/ECF, p. 9.)

6. On Monday, October 2, 2017, Plaintiff was transferred and booked into the Sarpy County Jail. (Filing 46-2 at CM/ECF p. 2, ¶ 4; Filing 46-3 at CM/ECF p. 7, ¶ 7; Filing 46-5 at CM/ECF pp. 1-3, 11.)

7. During intake at the Sarpy County Jail, jail personnel acknowledged Plaintiff had a fractured left elbow and that surgery was scheduled for October 3, 2017. (Filing 46-2 at CM/ECF p. 2, ¶ 4; Filing 46-3 at CM/ECF pp. 2, 7, ¶¶ 6, 7; Filing 46-4 at CM/ECF pp. 7-8; Filing 46-5 at CM/ECF p. 11.)

8. The jail nurse was informed by Court Services that there were not officers available on such short notice for a two-officer escort on October 3, 2017. The jail nurse was also informed by the surgeon's office that Plaintiff's surgery could only be rescheduled at a hospital in Council Bluffs, Iowa. Court Services informed the jail nurse that Plaintiff could not be transported across state lines for medical treatment. (Filing 46-3 at CM/ECF pp. 2, 7, ¶¶ 6, 7; Filing 46-4 at CM/ECF p. 8; Filing 46-5 at CM/ECF p. 11.)

9. It was the policy of the Sarpy County Jail that prisoners would not be transported across state lines for medical treatment because such transportation could require an extradition order in order to bring the prisoner back to Sarpy

---

surgery was scheduled at a hospital in Iowa. (Filing 46 at CM/EF p. 4, ¶ 3.) Plaintiff's Amended Complaint does not explicitly state where the surgery was to take place. (*See* Filing 22.) Nonetheless, the medical records indicate that the surgery was scheduled for a hospital in Omaha, Nebraska, and that post-operative appointments were scheduled at a medical clinic in Council Bluffs, Iowa. (Filing 46-3 at CM/ECF pp. 2, 7, ¶¶ 6, 7; Filing 46-4 at CM/ECF, pp. 8-10; Filing 46-5 at CM/ECF p. 11.)

County. (Filing 46-1 at CM/ECF p. 2, ¶ 10; Filing 46-3 at CM/ECF pp. 2, 7, ¶¶ 6, 7; Filing 46-4 at CM/ECF p. 8; Filing 46-5 at CM/ECF p. 11.)

10. The jail nurse arranged for a different doctor to take over Plaintiff's care "due to inability to transport inmate across state lines and for scheduling difficulties." (Filing 46-3 at CM/ECF pp. 2, 7, ¶¶ 6, 7; Filing 46-4 at CM/ECF p. 8; Filing 46-5 at CM/ECF p. 11.)

11. On October 3, 2017, the day after Plaintiff was booked into the Sarpy County Jail, jail personnel transported Plaintiff to a doctor's office in Omaha, Nebraska to have his arm examined and to evaluate Plaintiff for surgery. (Filing 46-3 at CM/ECF pp. 2, 7, ¶¶ 6, 7; Filing 46-4 at CM/ECF pp. 17-20; Filing 46-5 at CM/ECF p. 11.)

12. Plaintiff underwent surgery on his left elbow on October 12, 2017. (Filing 46-3 at CM/ECF p. 2, ¶ 6; Filing 46-4 at CM/ECF pp. 31-34.) He was prescribed pain medication and discharged the same day. (Filing 46-3 at CM/ECF p. 2, ¶ 6; Filing 46-4 at CM/ECF pp. 36-37.)

13. Due to the extent of his injuries, Plaintiff underwent a second surgery on his left elbow on November 1, 2017. (Filing 46-3 at CM/ECF p. 2, ¶ 6; Filing 46-4 at CM/ECF pp. 67-69.)

14. Plaintiff had several post-operative doctor's visits, and his recovery was consistent with the surgeon's expectations. (Filing 46-3 at CM/ECF p. 2, ¶ 6; Filing 46-4 at CM/ECF pp. 79, 81-85, 87-92.)

15. In 2017, the Sarpy County Sheriff's Office, a department within Sarpy County, Nebraska, had six major divisions handling distinct types of public services, one of which was the Jail Division. (Filing 46-1 at CM/ECF p. 1, ¶ 3.)

16. Sheriff Davis oversees the entire Sarpy County Sheriff's Office. His days are primarily consumed with handling administrative functions, including being responsible for the approximately $19.5 million Sheriff's Office budget, and handling personnel matters that arise regarding the approximately 245 sworn law enforcement and civilian employees within the Sheriff's Office. (*Id.* at CM/ECF p. 2, ¶ 4.)

17. In 2017, a Captain-ranked deputy had the responsibility of serving as the Commander of the Jail Division within the Sarpy County Sheriff's Department, and a Lieutenant-ranked deputy was assigned to assist the Captain with day-to-day jail operations and overseeing the lower-ranked commissioned and civilian staff. (*Id.* at CM/ECF p. 2, ¶ 5.)

18. In October 2017, Dan Shukis was the Captain assigned to the Jail Division, and Brian Richards was the Lieutenant assigned to the Jail Division. (*Id.* at CM/ECF p. 2, ¶ 6; Filing 46-2 at CM/ECF p. 2, ¶ 3.)

19. In October 2017, there were approximately eight Sergeants in the Jail Division of the Sheriff's Department who were below the Lieutenant in the chain of command and acted as shift supervisors. (Filing 46-1 at CM/ECF p. 2, ¶ 7.)

20. In October 2017, below those Sergeants in the chain of command were approximately fifty sworn law enforcement deputies who worked "on the floor" at the jail and approximately seven civilian booking clerks. (*Id.* at CM/ECF p. 2, ¶ 8.)

21. In the usual course of business, Sheriff Davis was not personally present in the jail on a daily basis as the day-to-day operations of the jail were supervised by the Captain, Lieutenant, and Sergeants assigned to the Jail Division. (*Id.* at CM/ECF p. 2, ¶ 9.)

22. Sheriff Davis never had any direct contact with Plaintiff or any other inmate in the Sarpy County Jail in 2017. (*Id.* at CM/ECF p. 3, ¶ 11.)

23. Sheriff Davis had no personal knowledge of the medical evaluations or treatment received by Plaintiff while he was in the Sarpy County Jail, nor did Sheriff Davis have personal knowledge of the decision-making process of the jail's supervisors in scheduling Plaintiff's surgeries. (*Id.* at CM/ECF p. 3, ¶ 12.)

24. Sarpy County Jail personnel never discussed with Sheriff Davis any details regarding Plaintiff's injuries or his medical treatment. (*Id.* at CM/ECF p. 3, ¶ 13.)

25. Sheriff Davis did not direct any Sarpy County employee to not transport Plaintiff for surgery scheduled on October 3, 2017, nor did he instruct any employee to schedule and transport him to a doctor's visit on October 3, 2017. (*Id.* at CM/ECF p. 3, ¶ 14.)

26. No member of the Sarpy County Jail staff contacted Sheriff Davis about Plaintiff's injuries or medical treatment. (*Id.* at CM/ECF p. 3, ¶ 15.)

27. The first time that Sheriff Davis became aware of Plaintiff's existence, or any of the circumstances alleged in the Complaint, was after Plaintiff filed the original Complaint in this matter. (*Id.* at CM/ECF p. 3, ¶ 16.)

28. Sheriff Davis did not author the written policies or standard operating procedures of the Jail Division; generally, they were drafted by jail command staff and then the Chief Deputy reviewed and signed off on the policies. (*Id.* at CM/ECF p. 3, ¶ 17.)

29. Sheriff Davis did not make any of the operational decisions regarding when Plaintiff received medication or medical treatment during the time when Plaintiff was an inmate at the Sarpy County Jail. (Filing 46-2 at CM/ECF p. 3, ¶ 9.)

# VI.  DISCUSSION

## A.  Qualified Immunity

Qualified immunity shields government officials from suits for damages under § 1983 if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019), *as amended* (Nov. 26, 2019) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "The immunity is an *immunity from suit*, not merely from liability." *Id.* (emphasis in original).

Qualified immunity is designed "to avoid 'subject[ing] government officials either to the costs of trial or to the burdens of broad-reaching discovery' in cases where the legal norms the officials are alleged to have violated were not clearly established at the time." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Anderson as trustee for next-of-kin of Anderson v. City of Minneapolis*, 934 F.3d 876, 881 (8th Cir. 2019) (quoting *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005)).

"Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law. But if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment." *Olson v. Bloomberg*, 339 F.3d 730, 735 (8th Cir. 2003) (quoting *Greiner v. City of Champlin*, 27 F.3d 1346, 1352 (8th Cir. 1994)).

The court must follow a two-step inquiry in a qualified immunity analysis: "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Jackson v. Stair*, 944 F.3d 704, 710 (8th Cir. 2019) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009)). If

Plaintiff cannot satisfy both prongs, Defendant is entitled to qualified immunity. *See Correia v. Jones*, 943 F.3d 845, 847 (8th Cir. 2019); *Recca v. Pignotti*, 456 F. Supp. 3d 1154, 1161 (D. Neb. 2020); *see also Davis v. Chase Cnty. Sch. Dist. No. 536*, No. 7:17-CV-5007, 2019 WL 1506690, at *4 (D. Neb. Apr. 5, 2019) ("To withstand a motion for summary judgment on qualified immunity grounds, a civil rights plaintiff must (1) assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right."). Courts "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted).

**B. Deliberate Indifference to a Serious Medical Need**

The constitutional obligation to provide medical care to those in custody may be violated when officials "intentionally deny[ ] or delay[ ] access to medical care or intentionally interfer[e] with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) ("[D]elays in treating painful medical conditions, even if not life-threatening, may support an Eighth Amendment claim.") (quotations omitted).[5]

---

[5] Plaintiff alleges that Sheriff Davis was deliberately indifferent to his serious medical needs when he was a pretrial detainee. A convicted prisoner's conditions of confinement are subject to scrutiny under the Eighth Amendment, while a pretrial detainee's challenge to such conditions is analyzed under the Fourteenth Amendment's Due Process Clause. "This makes little difference as a practical matter, though: Pretrial detainees are entitled to the same protection under the Fourteenth Amendment as imprisoned convicts receive under the Eighth Amendment." *Davis v. Oregon Cnty. Mo.*, 607 F.3d 543, 548 (8th Cir. 2010) (internal quotation and citation omitted). Therefore, cases discussing the Eighth Amendment are applicable to this case despite Plaintiff's status as a pretrial detainee during the events at issue.

To prevail on this claim, Plaintiff must prove that Sheriff Davis acted with deliberate indifference to Plaintiff's serious medical needs. *See Estelle*, 429 U.S. at 106. The deliberate-indifference standard includes both an objective and a subjective component. Plaintiff must demonstrate that (1) he suffered from objectively serious medical needs, and (2) Sheriff Davis knew of, but deliberately disregarded, those needs. *See Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) (Eighth Amendment claim based on inadequate medical attention requires proof that officials knew about excessive risks to inmate's health but disregarded them and that their unconstitutional actions in fact caused inmate's injuries); *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000).

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

"Deliberate indifference is equivalent to criminal-law recklessness, which is more blameworthy than negligence, yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub*, 638 F.3d at 914-15 (internal quotations and citation omitted). "An obvious risk of harm justifies an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate." *Id.* at 915 (citation omitted). "Deliberate indifference must be measured by the official's knowledge at the time in question, not by hindsight's perfect vision." *Id.* (internal quotations and citation omitted).

## C. Sheriff Davis—Supervisory Liability

It is undisputed, and Sheriff Davis concedes, that Plaintiff suffered from a serious medical need. (*See* [Filing 46 at CM/ECF p. 18](#) ("Plaintiff did have a relatively serious medical need.").) Having clearly established the objective component of the "deliberate indifference" claim, the court moves to the subjective

13

component as applied to Sheriff Davis. Plaintiff alleges that Sheriff Davis "is responsible for the lack of medical attention [Plaintiff] received from [Sheriff Davis's] staff." ([Filing 22 at CM/ECF p. 2](#).) The court understands Plaintiff is asserting that Sheriff Davis is liable in his capacity as a supervisor.

In section 1983 actions, supervisory liability is limited. *Ottman v. City of Indep., Mo.*, 341 F.3d 751, 761 (8th Cir. 2003); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). A supervisor cannot be held liable for an employee's unconstitutional actions based on a theory of respondeat superior. *Ottman*, 341 F.3d at 761; *Boyd*, 47 F.3d at 968; *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990). Rather, a supervisor incurs liability for a violation of a federally protected right when the supervisor is personally involved in the violation or when the supervisor's corrective inaction constitutes deliberate indifference to or tacit authorization of the violative practices. *Langford*, 614 F.3d at 460; *Ottman*, 341 F.3d at 761; *Choate v. Lockhart*, 7 F.3d 1370, 1376 (8th Cir. 1993). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what [he or she] might see." *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988)); *accord Ottman*, 341 F.3d at 761.

Plaintiff has presented no evidence that Sheriff Davis was personally involved in any delay or denial of medical care to Plaintiff. There is no evidence that the acts complained of were done at the direction or with the knowledge or consent of Sheriff Davis. At all relevant times, a captain, a lieutenant, and shift sergeants handled the day-to-day operations of the jail; Sheriff Davis had no direct contact with Plaintiff or any other inmate in the Sarpy County Jail in 2017. There also is no indication from the record that Sheriff Davis knew about Plaintiff's broken elbow or the medical care Plaintiff received while at the jail or the decision-making process used by the jail supervisors in scheduling Plaintiff's surgeries. Indeed, Sheriff Davis's affidavit establishes that he has never personally met Plaintiff, was entirely unaware of Plaintiff's incarceration or alleged medical needs until being served with the Complaint herein, and had no personal involvement whatsoever in any events or

omissions alleged in the Complaint or Amended Complaint. Dan Shukis, who was jail captain at all relevant times, confirms that, during 2017, Sheriff Davis did not personally participate in decisions regarding medical matters involving detainees or inmates at the Sarpy County Jail. Sheriff Davis could not have intentionally denied or delayed Plaintiff's access to medical treatment when he did not know about Plaintiff's medical situation.

Plaintiff also has not presented any evidence that Sheriff Davis tacitly authorized the circumstances about which Plaintiff complains. The undisputed evidence demonstrates that, during the time when Plaintiff was an inmate at the Sarpy County Jail, Sheriff Davis did not author the written policies or standard operating procedures of the Jail Division or make any of the operational decisions regarding when Plaintiff received medication or medical treatment. There is also no evidence that Sheriff Davis was directly involved in any policies that may have contributed to any delay or denial of treatment. Plaintiff has not presented evidence that Sheriff Davis knew about any scheduling issues that may have contributed to a delay in treatment or that Sheriff Davis was responsible for remedying those scheduling issues. *See Ottman*, 341 F.3d at 761.

Because there is no evidence that Sheriff Davis had any knowledge of Plaintiff's medical needs, or that he was personally involved in any delay or denial of medical care to Plaintiff, or that he tacitly authorized the circumstances complained of in this action, he is entitled to the entry of summary judgment. *See Vaughn v. Green Cnty., Ark.*, 438 F.3d 845, 851-52 (8th Cir. 2006) (county sheriff entitled to qualified immunity when he had no personal interaction with the detainee and there was no evidence suggesting he was actually aware of the detainee's specific medical symptoms and complaints while incarcerated; sheriff reasonably delegated to others certain duties with respect to direct inmate supervision).

IT IS THEREFORE ORDERED that:

1. Defendant's Motion for Summary Judgment ([filing 45](filing 45)) is granted, and this case is dismissed with prejudice.

2. A separate judgment will be entered.

Dated this 30th day of June, 2021.

BY THE COURT:

*Richard G. Kopf*
Richard G. Kopf
Senior United States District Judge